IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-50721
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

        v.

SHELL DANIEL HOGUE,

                              Defendant-Appellant.

_____

        Appeal from the United States District Court
              for the Western District of Texas
                      (A-96-CR-46-2)
_____
                      May 30, 1997
Before KING, DAVIS, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

        Shell Daniel Hogue appeals the sentence imposed by the
district court on the grounds that the district court should not
have made upward adjustments to his base offense level for his
role as a leader in a criminal activity and for possession of a
firearm during a drug trafficking offense.  We affirm.

                      I. BACKGROUND

_____

        [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

1

*A. Statement of Facts*

According to the Presentence Investigation Report (PSR), Drug Enforcement Administration agents received information from a confidential informant (CI) in February 1996 regarding the drug trafficking activities of Hogue, who reportedly distributed multi-kilogram quantities of cocaine and multi-dosages of lysergic acid diethylamide (LSD) and Ecstasy throughout Texas. On February 7, 1996, Hogue delivered 894.2 grams of amphetamine to the CI in Houston.  On February 12, 1996, Hogue, who lived in Houston, provided 5000 dosage units of LSD to the CI and instructed the CI to deliver the LSD to Herbert Agapetus in Austin, Texas.  Hogue also instructed the CI to retrieve money that Agapetus owed Hogue from previous drug transactions.  Hogue told the CI that he had supplied Agapetus with 20,000 hits of LSD the previous week.  On February 13, 1996, agents in Austin made a controlled delivery to Agapetus, resulting in the arrest of Agapetus and the seizure of an additional 2500 units of LSD.

On February 16, 1996, a search warrant was executed at a townhouse in Houston.  Agents seized 1000 grams of amphetamine, 662.3 grams of methamphetamine, 12.4 grams of Ecstasy, and 1.3 grams of cocaine.  They also recovered a loaded nine millimeter semiautomatic handgun, two Rolex watches, a money counter, and documentation that linked Hogue to the townhouse.

On March 19, 1996, agents stopped Hogue upon his return from

2

New York on a privately chartered flight and seized $52,400 in cash from his briefcase.  Hogue was arrested later that month.

*B. Procedural History*

Hogue was charged by indictment with conspiracy to possess LSD with intent to distribute, in violation of 21 U.S.C. § 846, and possession of LSD with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Hogue pleaded guilty to the substantive count in exchange for dismissal of the conspiracy count.

The district court overruled Hogue's objections to the PSR's recommended guideline adjustments to his base offense level of two points for his leadership role in the offense and two points for possession of a firearm during a drug trafficking offense. The court explicitly adopted the factual findings and guideline application in the PSR, imposing the minimum guideline sentence of 135 months in prison, followed by five years supervised release, a fine of $17,500, and a mandatory assessment of $50. Hogue timely appealed.

II. DISCUSSION

*A. Leadership Role*

Hogue argues that the district court erred in enhancing his base offense level pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(c) based on its finding that he held a leadership role in the criminal activity.  Hogue contends that the finding was improperly based on conclusory statements contained in the PSR

and that the absence of any detailed information in the report relating to such a leadership role denied him the ability to rebut the allegations at sentencing. Hogue insists that the information in the PSR establishes only a buyer-seller relationship between himself and Agapetus, which is not enough to support an increase in his base offense level based on his role in the criminal activity.

Under § 3B1.1(c), a defendant's base offense level may by increased by two points if the defendant was an organizer, leader, manager, or supervisor of at least one other participant in any criminal activity involving less than five participants. A participant is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 comment. (n.1). A defendant's role in the criminal activity may be deduced inferentially from the available facts for the purpose of applying § 3B1.1. United States v. Ayala, 47 F.3d 688, 690 (5th Cir. 1995). Factors to consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, and the degree of control and authority exercised over others. Id.; U.S.S.G. § 3B1.1 comment. (n.4).

We review a district court's adjustment pursuant to § 3B1.1(c) for clear error. Ayala, 47 F.3d at 689-90. Factual findings are not clearly erroneous if they are "plausible in

light of the record read as a whole." Id. at 690.

The PSR "generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the sentencing guidelines." United States v. Alfaro, 919 F.2d 962, 966 (5th Cir. 1990). However, "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." United States v. Elwood, 999 F.2d 814, 817-18 (5th Cir. 1993).

We agree with Hogue that the statement in the PSR that "[w]itnesses described Hogue as being the director of a drug organization that extended to New York and involved 20 or more individuals" is conclusory and does not support an increase in Hogue's base offense level. However, to qualify for an adjustment, Hogue only had to be the organizer, leader, manager, or supervisor of one other participant -- in this case, Agapetus. U.S.S.G. § 3B1.1 comment. (n.2). Hogue contacted Agapetus and offered to sell drugs to him. Hogue controlled the quantity and the price of the drugs sold. Hogue supplied drugs to Agapetus on a "front" basis, advancing large quantities of drugs to Agapetus and not requiring payment until Agapetus had successfully sold them. On several occasions, in fact, Agapetus returned drugs of poor quality to Hogue because he was unable to sell them. Furthermore, after Agapetus was arrested, he called Hogue, who advised him to collect as much money as possible from the other distributors. The district court was not required to treat the

5

post-arrest call as "merely common sense advice" but could instead treat it as direction.

Although (as the government conceded at sentencing) the CI cannot be considered a participant, see U.S.S.G. § 3B1.1 comment. (n.1), Hogue's interaction with the CI can be considered as a factor indicating Hogue's leadership or organizational role. United States v. Peters, 978 F.2d 166, 170 (5th Cir. 1992)(finding that defendants were organizers of criminal activity under § 3B1.1(c) based on, among other factors, defendants' recruitment of informant's involvement and meeting with undercover Customs agent). Hogue initiated contact with the CI and directed the CI to deliver the LSD to Agapetus and collect money which Agapetus owed him. Based on the evidence in the PSR, the district court did not clearly err in finding that Hogue was an organizer or leader of the criminal activity.[1] See United States v. Vaquero, 997 F.2d 78, 84 (5th Cir.)(finding that upward

---

[1]We note that in addition to relying on the evidence in the PSR to overrule Hogue's objection to his sentence enhancement, the district court stated that "Mr. Hogue has been in this business for a long time . . . . No question in my mind after handling Mr. Agapetus's case that he was within the influence and supervision of Mr. Hogue." These additional factors stated by the district court are not appropriate bases for adjustment of the base offense level pursuant to § 3B1.1(c). However, we decline to vacate the sentence because, in light of the evidence in the PSR, the district court would have imposed an identical sentence even without reference to these improper bases for adjustment. See United States v. Giraldo, No. 96-20390, 1997 WL 174810 (5th Cir. Apr. 11, 1997)(affirming the sentence imposed by the district court after concluding that the district court "reached the right result but for the wrong reasons").

6

adjustment of base offense level was warranted where defendant had "determined whether to purchase cocaine from co-conspirators, made decisions about its quantity, price, and place of delivery, and directed others to transport it"), cert. denied, 510 U.S. 1016 (1993).

*B. Firearm Possession*

Hogue argues that the district court erred in assessing a two-level adjustment to his base offense level pursuant to § 2D1.1(b)(1) based on its finding that he possessed a firearm during the commission of a drug trafficking offense. Hogue contends that his conviction is based on his drug transaction with the CI and Agapetus and that there is no evidence that he possessed a gun during that transaction.

The district court's decision to enhance Hogue's sentence for possession of a firearm pursuant to § 2D1.1(b)(1) is a factual determination which we review for clear error. United States v. Vital, 68 F.3d 114, 119 (5th Cir. 1995). Section 2D1.1(b)(1) provides for a two-point upward adjustment to the offense level of a drug crime if "a dangerous weapon (including a firearm) was possessed." The adjustment "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3); United States v. Mitchell, 31 F.3d 271, 277 (5th Cir.), cert. denied, 513 U.S. 977 (1994).

7

"The government may satisfy its burden of proving a connection by providing evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." Mitchell, 31 F.3d at 278 (internal quotations omitted). In other words, the government meets its burden if it proves by preponderance of the evidence that "'a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'" United States v. Eastland, 989 F.2d 760, 770 (5th Cir.)(quoting United States v. Hooten, 942 F.2d 878, 882 (5th Cir. 1991)), cert. denied, 510 U.S. 890 (1993). Furthermore, the sentencing court need not limit its attention to the offense of conviction but may also increase a defendant's sentence pursuant to § 2D1.1(b)(1) if it concludes that a firearm was possessed in connection with unadjudicated offenses that constitute relevant conduct, as defined by U.S.S.G. § 1B1.3. Vital, 68 F.3d at 119; United States v. Paulk, 917 F.2d 879, 883-84 (5th Cir. 1990).

Section 1B1.3(a)(2) defines "relevant conduct" to include acts committed by the defendant that are subject to the count-grouping rule of § 3D1.2(d) and are "part of the same course of conduct or common scheme or plan as the offense of conviction." Hogue's possession of large, distributable quantities of other controlled substances was subject to the grouping rule of § 3D1.2(d) and was part of the same course of conduct as the offense of conviction. Pursuant to § 1B1.3(a)(2), the quantity

8

of drugs used to calculate Hogue's base offense level included the amount seized from Agapetus in Austin, the amount found in the townhouse in Houston, and the amount of LSD that Hogue provided to Agapetus the week before Agapetus was arrested. Because the gun was found in the same location as the drugs in the townhouse, the district court did not clearly err in raising the base offense level two levels for possession of a gun during a drug trafficking offense.

Hogue also argues that his sentence should be vacated because the district court did not make specific findings as to whether the possession of the other drugs was part of the same course of conduct as the offense of conviction. Federal Rule of Criminal Procedure 32 requires the sentencing court either to make specific findings as to all contested facts contained in the presentence report or to determine that those facts will not be considered in sentencing. FED. R. CRIM. P. 32(c)(3)(D). Hooten, 942 F.2d at 881. However, "Rule 32 does not require a catechismic regurgitation of each fact determined and each fact rejected when they are determinable from a PSR that the court has adopted by reference." United States v. Sherbak, 950 F.2d 1095, 1099 (5th Cir. 1992). When a sentencing court expressly adopts the facts as set forth in the PSR, there is an implicit determination by the court that the probation department's version of the facts should be credited. Id. If a defendant objects to the PSR but does not present rebuttal evidence to

refute the facts, the district court may adopt the facts in the PSR without further inquiry.  <u>Id</u>. at 1099-1100.

The basis for the district court's relevant conduct finding was clear: the drug quantity used in the PSR to calculate Hogue's base offense level included the drugs found in the townhouse. The district court adopted the factual findings in the PSR.  The district court did not err because no further findings were required.

## III. CONCLUSION

For the foregoing reasons, the sentence imposed on Hogue by the district court is AFFIRMED.